IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NEBRASKA FURNITURE MART, INC., | ) | Case No. 8:21-cv-192 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| GUARDSMAN US LLC, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff Nebraska Furniture Mart, Inc. ("NFM"), by and through undersigned counsel of record, and for its Complaint against Defendant Guardsman US LLC ("Guardsman"), states and alleges as follows:

### Preliminary Statement

1. This case arises out of Guardsman's refusal to pay NFM a $330,971.16 rebate for NFM's sale of Guardsman® furniture protection plans in calendar year 2020. Guardsman's obligation to make the payment at issue arises out of a "Trade Program" provided for by the parties' 2018 Agreement, which Guardsman reaffirmed in March 2019 and March 2020.

### Parties, Jurisdiction, and Venue

2. Plaintiff Nebraska Furniture Mart, Inc., is a Nebraska corporation with its principal place of business in the State of Nebraska.

3. Defendant Guardsman US LLC is a Delaware limited liability company. On information and belief, Guardsman US LLC is a wholly owned subsidiary of Amynta Holdings LLC, a Delaware limited liability company. On information and belief, Amynta Holdings LLC is a wholly owned subsidiary of Amynta Agency Inc., a Delaware corporation with its principal place of business in the State of Texas.

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of costs and interests, and is between citizens of different states.

5. Venue is proper in the District of Nebraska because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Background

A.  The Agreement

6. NFM and Guardsman are parties to a "Retailer Agreement" (the "Agreement"), the term of which commenced on November 15, 2018, and ended on December 31, 2020.

7. Pursuant to the Agreement, NFM agreed to sell certain Guardsman® furniture protection plans (the "Plans") to customers in NFM's stores located in Omaha, Nebraska; Clive, Iowa; Kansas City, Kansas; and The Colony, Texas; on terms and conditions more fully described in the Agreement.

8. On March 29, 2019, Kerry Lawless, the Vice President of Sales for Guardsman, executed a "Vendor Participation Agreement" (the "VPA"), which contained additional terms relevant to the ongoing contractual relationship between NFM and Guardsman.

9. Further, on March 19, 2020, Mr. Lawless executed a document captioned "Funding Program" (the "FPA"), which contained additional terms relevant to the ongoing contractual relationship between NFM and Guardsman.

10. By way of example, the VPA and the FPA addressed payment terms, provided for a payment of anniversary support funds to NFM, and defined the relevant rebate terms.

11. The Agreement terminated pursuant to its terms on December 31, 2020.

12. The Agreement's survival provision provided: "Each term of this Agreement which expressly survives expiration or termination of this Agreement, or otherwise where the context reasonably requires, shall survive expiration or termination of this Agreement."

B. <u>The Trade Program</u>

13. This dispute arises out of Guardsman's refusal to pay NFM certain amounts that NFM was owed under a "Trade Program" provided for by the Agreement (the "Trade Program Funds"), specifically, the amount owed for calendar year 2020 (the "2020 Trade Program Funds").

14. The Trade Program is a rebate that Guardsman offers. It is to be paid annually in the amount of 5% of the cost of plans purchased by NFM.

15. The Trade Program was originally defined by an unnumbered section of the Agreement, which provides as follows:

> Guardsman offers an annual Trade Program in the amount of 5% of the cost of plans purchased by [NFM]. The percentage amount is based on continuing sales in all categories (fabric, leather, hard surface case goods, area rugs, outdoor furniture, Gold, window treatment, carpet, adjustable bed and furniture care products). The Trade Program is subject to change if NFM changes vendors in any of the protection categories. The trade program dollars are to be re-invested in the Guardsman protection program to help increase the overall close ratio performance of the program. The Trade Program is paid annually and will not be issued if [NFM] has a past due balance. Trade programs are subject to reevaluation on an annual (calendar year) basis and in the event any changes are made to the Trade Program, Guardsman agrees to provide [NFM] with notice detailing the proposed change(s) at least 30 days in advance of any change going into effect. In the event of a change to the Trade Program, within 20 days after [NFM] Receiving [sic] notice of a change, [NFM] may terminate this Agreement without penalty. If [NFM] Terminates [sic] this agreement subject to this section, the Agreement shall terminate in 90 days post [NFM's] election to terminate.

16. The VPA that Guardsman executed in March 2019 provided that there would be a "Volume Rebate," specifically, a "5% rebate based on net receiving." The VPA provided that it was effective from January 1, 2019, to December 31, 2019.

17. By executing the VPA, Guardsman agreed that the "5% rebate based on net receiving" was "valid from [the VPA's] effective date."

18. Consistent with the VPA, Guardsman paid a 5% rebate for net receiving based on sales in calendar year 2019.

19. Additionally, the FPA that Guardsman executed in March 2020 provided that "Volume-Based Funds" were available. Specifically, the FPA provided for a "Rebate Amount" of "5%" based on "Net Receipts" for sales from January 1 to December 31.

20. By executing the FPA, Guardsman "confirm[ed]" that the Trade Program was a 5% rebate based on net receipts for the calendar year that "will be upheld."[1]

21. Nevertheless, Guardsman has refused to make payment of the 2020 Trade Program Funds.

C. Guardsman's Refusal to Pay the 2020 Trade Program Funds

22. The 2020 Program Funds total $330,971.16.

23. On February 15, 2021, an NFM representative emailed Mr. Lawless, Guardsman's Vice President of Sales, to inquire as to "the status of the 5% volume rebate check," that is, the 2020 Trade Program Funds.

24. On February 18, 2021, Mr. Lawless responded by email.

25. In that email, Mr. Lawless contended that the 2020 Trade Program Funds were not owed, providing the following explanation:

> The purpose of the Trade Program is to re-invest the funds to "increase the overall close ratio performance of the program.["] Without a valid agreement, the performance of this requirement is an impossibility as how could NFM increase the close ratio for the Guardsman Program while with another vendor?

---

[1] The introductory language to the FPA provided: "Any information provided in this agreement will be ongoing unless notified in writing thirty (30) days prior to termination." Further, the following statement was printed immediately above Mr. Lawless's signature: "By signing this form, you confirm that all information stated above is accurate and will be upheld via the Vendor Master Agreement."

>The Trade Program language also says it's "subject to change if NFM changes vendors in any of the protection categories". NFM moved vendors, so we changed the program and are no longer paying the Trade Program.

26. On March 5, 2020, counsel for NFM sent a formal demand to Guardsman for the 2020 Trade Program Funds (the "Demand Letter").

27. The Demand Letter explained that any obligation to reinvest the Trade Program funds lapsed when the agreement terminated on December 31, 2020.

28. Referencing the Agreement's survival provision, the Demand Letter explained that nothing in the Agreement expressly required NFM to reinvest Trade Program funds in the Guardsman program following expiration of the Agreement and that the context did not reasonably require NFM to do so.

29. The Demand Letter further explained that there was no factual or legal basis for Mr. Lawless's contention that the Trade Program had "changed" such that the Trade Program funds were "no longer [being] pa[id]."

30. By its terms, the Trade Program required at least 30 days' advance notice of any change to the Trade Program, which advance notice was never provided.

31. Because no such advance notice was provided, the contention that the Trade Program was changed appears to have been a pretextual attempt to avoid Guardsman's obligation to pay the 2020 Trade Program Funds.

32. Counsel for Guardsman responded to the Demand Letter by way of a letter dated March 22, 2021.

33. Therein, Guardsman advanced a new argument: that the "trade program dollars are not a rebate."

34. Guardsman's new argument, that the 2020 Trade Program Funds are not a rebate, is flatly inconsistent with Guardsman's "confirm[ation]" in the FPA that the Agreement provided a 5% rebate and that the 5% rebate "will be upheld."

35. Accordingly, on April 23, 2021, counsel for NFM responded to counsel for Guardsman. That response enclosed a copy of the FPA, explained that the FPA expressly provided for a 5% rebate, and reiterated the demand for the 2020 Program Funds.

36. On May 6, 2021, counsel for Guardsman sent a letter to counsel for NFM "reject[ing] that anything is owed," necessitating this action.

## COUNT I:  BREACH OF CONTRACT

37. The foregoing allegations are incorporated herein by reference.

38. The Agreement was a valid and enforceable contract.

39. Pursuant to the Agreement, Guardsman was obligated to pay NFM the 2020 Trade Program Funds.

40. The 2020 Trade Program Funds are due and owing to NFM.[2]

41. Despite demand, Guardsman has failed and refused to pay NFM the 2020 Trade Program Funds, thereby breaching the Agreement.

42. Guardsman's breach of the Agreement has damaged NFM in an amount no less than $330,971.16.

43. All conditions precedent, if any, to bringing this action have occurred or been performed.

## COUNT II:  EQUITABLE ESTOPPEL

44. The foregoing allegations are incorporated herein by reference.

---

[2] To the extent the Trade Program was not a rebate by its own terms, the VPA and the FPA served to amend the Agreement to provide for a 5% rebate.

45. In the alternative, Guardsman is equitably estopped from arguing that the 2020 Trade Program Funds are not a rebate.

46. In the VPA, Guardsman agreed that there would be a 5% rebate based on net receiving.

47. In the FPA, Guardsman "confirm[ed]" that the Agreement provided a 5% rebate.

48. Despite the agreements and confirmations in the VPA and FPA, Guardsman now asserts that the Agreement did not provide for a rebate.

49. If Guardsman contends that the Trade Program was not a rebate, Guardsman's conduct in executing the VPA and the FPA was a false representation or concealment of material fact, or, at least, was calculated to convey the impression that the facts are otherwise than and inconsistent with the position that Guardsman now advances.

50. Guardsman intended, or at least expected, that its conduct in executing the VPA and the FPA would be acted upon by NFM or would influence NFM.

51. Guardsman had actual knowledge of the relevant facts regarding the terms of the Trade Program and the parties' contractual relationship.

52. NFM relied in good faith on Guardsman's execution of the VPA and the FPA.

53. NFM acted and/or refrained from acting, based upon Guardsman's execution of the VPA and the FPA.

## COUNT III:  PROMISSORY ESTOPPEL

54. The foregoing allegations are incorporated herein by reference.

55. In the alternative, the doctrine of promissory estoppel requires Guardsman to pay the 2020 Trade Program Funds.

56.     By executing the FPA, Guardsman promised that it would pay NFM a 5% rebate for the 2020 calendar year, as it did for calendar year 2019 following the execution of the VPA.

57.     Guardsman should have reasonably expected its execution of the VPA and the FPA to induce action or forbearance by NFM.

58.     Guardsman's execution of the VPA and the FPA did induce NFM to act or to refrain from acting.

59.     Injustice can only be avoided by enforcing Guardsman's promise to pay a 5% rebate, as reflected in the VPA and the FPA.

WHEREFORE, NFM respectfully requests the entry of judgment in its favor and against Guardsman in the amount of $330,971.16, or such other amount as may be established at trial; for pre- and post-judgment interest as provided by applicable law; for the costs of this action; and for such other relief as the Court deems just and equitable.

DATED this 17th day of May, 2021.

                                NEBRASKA FURNITURE MART, INC., Plaintiff

                                By:    */s/ Jarrod D. Reece*
                                          Jarrod D. Reece, #24800
                                          Likes Meyerson Hatch LLC
                                          444 Regency Parkway Drive, Suite 100
                                          Omaha, NE 68114
                                          Telephone: (402) 506-4600
                                          Facsimile: (402) 506-4610
                                          jreece@lmhlawfirm.com
                                          Attorneys for Plaintiff